IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-00426-WYD-BNB

VINCENT GAGLIARDI,

Plaintiff,

v.

OFFICER DAN DURAN,
OFFICER ARCHIE VIGIL,
OFFICER GABE VAZQUEZ,
CITY MANAGER JIM SOLTIS,
OFFICER BRANDON BARRY, and
CHIEF OF POLICE CHARLES GLORIOSO,

Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on the defendants' **Motion to Dismiss** [Doc. #69, filed 10/14/2009] (the "Motion"). Also before me is the plaintiff's proposed second amended complaint [Doc. #87, tendered on 12/04/2009]. I respectfully RECOMMEND that the Motion be GRANTED. I further RECOMMEND that the plaintiff's attempt to file a second amended complaint be DENIED.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff filed his Amended Complaint [Doc. #49] on September 8, 2009. The Amended Complaint contains the following allegations:

1. On September 24, 2004, the plaintiff reported to the Trinidad Police Department that Jeff Trujillo assaulted Vincent Santistevan by repeatedly kicking him in the head. *Amended Complaint*, ¶ 16. An unidentified agent for the Trinidad Police Department contacted the plaintiff by telephone to investigate the incident. Id. at ¶ 17. Jeff Trujillo was not arrested. Id. at ¶ 18.

2. In June 2006, Jeff Trujillo threatened the plaintiff with physical violence. Id. at ¶ 19. Shortly after the threat, and on the same night, the plaintiff was attacked by Jeff Trujillo's brothers, Henry Trujillo and Pat Trujillo. Id. at ¶ 20.

3. Henry Trujillo, a Deputy with the Las Animas County Sheriff's Department, was subsequently charged by the City of Trinidad with Disorderly Conduct for fighting in public. Id. at ¶ 22. Pat Trujillo was charged with assaulting the plaintiff. Id. at ¶ 23.

4. In June 2006, the plaintiff obtained a civil protection order against Jeff Trujillo in Case No. 06C274 (the "Restraining Order"). The Restraining Order was "made reciprocal over the [p]laintiff's objection." Id. at ¶ 25. The plaintiff also obtained non-reciprocal restraining orders against Henry Trujillo and Pat Trujillo. Id. at ¶ 26.

5. In September 2007, the plaintiff testified as a witness in a proceeding brought by Mr. Santistevan against Jeff Trujillo under section 16-5-209, C.R.S.[1] Id. at ¶¶ 28- 30. Mr. Santistevan's attorney argued "that Jeff Trujillo had received preferential treatment by local law enforcement agencies because of his relationship to two brothers (Henry an[d] Rich) who are employed in Las Animas County as law enforcement agents." Id. at ¶ 29. The judge held that the District Attorney's failure to prosecute Jeff Trujillo was arbitrary and without reasonable excuse. Id. at ¶ 30. In addition, Jeff Trujillo was ordered not to harass or intimidate any victim

---

[1] Section 16-5-209 provides in pertinent part:

> The judge of a court having jurisdiction of the alleged offense, upon affidavit filed with the judge alleging the commission of a crime and the unjustified refusal of the prosecuting attorney to prosecute any person for the crime, may require the prosecuting attorney to appear before the judge and explain the refusal. If after that proceeding, based on the competent evidence in the affidavit, the explanation of the prosecuting attorney, and any argument of the parties, the judge finds that the refusal of the prosecuting attorney to prosecute was arbitrary or capricious and without reasonable excuse, the judge may order the prosecuting attorney to file an information and prosecute the case or may appoint a special prosecutor to do so.

or witness while he was awaiting trial for the assault pursuant to section 18-1-1001, C.R.S.[2] Id. at ¶ 31.

6. On January 8, 2008, the plaintiff attended a hearing on a motion to modify the Restraining Order. Id. at ¶ 33. The plaintiff was concerned that Jeff Trujillo might retaliate against him again. Id.

7. On January 8, 2008, after the hearing, Jeff Trujillo called the Trinidad Police Department from the Duran Oil Company and falsely claimed that the plaintiff had threatened him outside the Las Animas County Court House. Id. at ¶ 34. As a result, the plaintiff was arrested in the presence of his parents and children for violation of the Restraining Order. Id. He was jailed for approximately 21 hours. Id. While he was restrained, he requested that Officer Duran not detain him at the Las Animas County Detention Center on the basis that he feared for his life because Henry Trujillo was on duty at the Detention Center. Id. at ¶ 36.

8. The plaintiff had to incur legal fees and hire an investigator to prove that Jeff Trujillo had filed a false report. Id. at ¶ 37. If defendants Duran, Vigil, and Vasquez had properly investigated Jeff Trujillo's report, "they would have established the fact that the Plaintiff was at his residence with his family at the time of the alleged occurrence." Id. at ¶ 38.

---

[2]Section 18-1-1001 provides in pertinent part:

> There is hereby created a mandatory protection order against any person charged with a violation of any of the provisions of this title, which order shall remain in effect from the time that the person is advised of his or her rights at arraignment or the person's first appearance before the court and informed of such order until final disposition of the action. Such order shall restrain the person charged from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged.

9. Shortly after the plaintiff's arrest, a hearing was held where Officer Brandon Barry testified as to the reasons why Jeff Trujillo was not arrested for the assault in September 2004. Id. at ¶ 39. Officer Barry's testimony was contrary to the physical evidence and witness statements presented at the September 2007 hearing. Id.

10. Subsequently, the special prosecutor dismissed the charge against the plaintiff for violating the Restraining Order because there was insufficient evidence and no likelihood of success at trial. Id. at ¶ 40.

11. In September 2008, Jeff Trujillo pled guilty to the assault on Mr. Santistevan and received a deferred sentence. Id. at ¶ 42. He was ordered to pay nearly $20,000 in court costs and restitution. Id.

12. Jeff Trujillo admitted that he falsely reported to the Trinidad Police Department that the plaintiff had violated the Restraining Order. Id. at ¶ 43.

The plaintiff is suing the defendants in their individual and official capacities. The Amended Complaint asserts eight claims:

Claim One is entitled "General Allegations." Id. at p. 12. In Claim One, the plaintiff states that the "acts complained of herein" constitute violations of his Fourth, Fifth, and Fourteenth Amendment rights including "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to be free from false arrest; and f) the right to just compensation for taking of property." Id. at ¶ 59.

Claim Two is brought pursuant to 42 U.S.C. § 1983 and is entitled "Failure to Implement Appropriate Policies, Customs and Practices." Id. at p. 13. Specifically, the plaintiff alleges that defendant Glorioso in his capacity as Chief of Police of the Trinidad Police Department and defendant City of Trinidad[3] "adopted and implemented careless and reckless policies, customs, or practices" allowing employees of the Trinidad Police Department to (1) "arrest a witness for the State of Colorado . . . without any reasonable training" in violation of the plaintiff's First Amendment rights, and (2) "restrain the Plaintiff and detain and endanger him in a detention facility that created a substantial risk of death or serious injury." Id. at ¶¶ 65-66. Claim Two further alleges that Glorioso and the City of Trinidad failed to adequately train and supervise defendants Dispatcher, Duran, Vigil, and Vasquez in violation of the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. Id. at ¶ 67. The defendants deprived the plaintiff of constitutionally protected rights including "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from a use of force by persons acting under color of state law; and e) the right to just compensation for taking of property." Id. at ¶ 69.

Claim Three is entitled "Violation of Civil Rights Pursuant to 42 U.S.C. § 1983 (False Arrest)." Id. at p. 14. The plaintiff alleges that defendants Duran, Vigil, and Vasquez arrested him without a warrant and detained him in violation of his Fourth, Fifth, and Fourteenth Amendment rights. Id. at ¶¶ 60, 71.

---

[3]The plaintiff did not name the City of Trinidad as a defendant in the Amended Complaint. See Docs. #75 and #83. He has submitted a proposed second amended complaint which names the City of Trinidad. I address the proposed second amended complaint below.

6

Claim Four is entitled "False Imprisonment." Id. at p. 15. The plaintiff alleges that the defendants' unlawful detention of him for approximately 21 hours constitutes the state tort of false imprisonment. Id. at ¶¶ 76-78.

Claim Five alleges that the defendants were negligent under state law when they (1) failed to arrest Jeff Trujillo on the night of the assault in September 2004; (2) failed to arrest Jeff Trujillo after he threatened the plaintiff in June 2006; and (3) arrested the plaintiff based on false statements made by Jeff Trujillo. Id. at ¶¶ 83-86.

Claim Six alleges that defendants Glorioso and the City of Trinidad negligently supervised defendants Vigil, Duran, Vasquez, Dispatcher, and unknown employees 1 and 2, and failed to provide proper training in dispatching information and identification of false reports. Id. at ¶¶ 89-94.

Claim Seven alleges that unspecified defendants conspired against the plaintiff to "protect fellow officer(s), and officer's family members" resulting in libel, false arrest, false imprisonment, and emotional distress to the plaintiff. Id. at ¶ 97.

Claim Eight alleges that the defendants are guilty of abuse of process for arresting him based on a false report.[4] Id. at ¶ 102.

---

[4]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

## III. ANALYSIS

### A. Claim One

The defendants assert, and the plaintiff does not dispute, that Claim One should be dismissed because it is redundant of Claims Two, Three, and Four. *Motion*, p. 4. Claim One alleges that the defendants violated his Fourth, Fifth, and Fourteenth Amendment rights including "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to be free from false arrest; and f) the right to just compensation for taking of property."

Claim Two alleges that Glorioso and the City of Trinidad failed to adequately train and supervise defendants Dispatcher, Duran, Vigil, and Vasquez in violation of the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights, and that the defendants deprived the plaintiff of constitutionally protected rights including "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from a use of force by persons acting under color of state law; and e) the right to just compensation for taking of property." Claim Three alleges that defendants Duran, Vigil, and Vasquez arrested and detained him in violation of his Fourth, Fifth, and Fourteenth Amendment rights. Claim Four alleges that the plaintiff was falsely imprisoned under state law.

Claim One's general allegations are redundant of the more specific allegations of Claims Two and Three. The Motion should be GRANTED insofar as it seeks dismissal of Claim One.

8

## B. Constitutional Claims

The individual defendants assert that they are entitled to qualified immunity. *Motion*, p. 8. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[5]

### Claim Three[6]

Claim Three alleges that defendants Duran, Vigil, and Vasquez arrested the plaintiff without a warrant and detained him in violation of his Fourth, Fifth, and Fourteenth Amendment

---

[5]The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643, at *3 n.6 (10th Cir. Aug. 10, 2009).

[6]I address Claim Three prior to addressing Claim Two because my analysis of Claim Three provides a foundation for understanding Claim Two.

rights. Id. at ¶ 71. The defendants state that under the undisputed relevant facts of this case, there was probable cause to arrest the plaintiff for violation of a protective order. *Motion*, p. 8.

"If a police officer has probable cause to believe that a person has committed or is presently committing a crime, then he or she may effectuate a warrantless arrest of the individual without violating the Fourth Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). "The constitutional validity of a warrantless arrest depends upon whether the arresting officer had probable cause." Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir. 1985) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." Karr, 774 F.2d at 1031.

Here, it is not plausible under the allegations of the Amended Complaint that the plaintiff was arrested without probable cause. "A person commits the crime of violation of a protection order if . . . the person . . . threatens . . . the protected person." C.R.S. § 18-6-803.5. The plaintiff admits that the Restraining Order was reciprocal between himself and Jeff Trujillo and that he was arrested "[a]s a result of Jeff Trujillo's false report to Trinidad Police" that the plaintiff had threatened Trujillo outside the Las Animas County Court House in violation of the Restraining Order. *Amended Complaint*, ¶¶ 25, 34-35. There are no factual allegations from which to infer that the arresting officer knew that Jeff Trujillo's report was false.[7]

The plaintiff alleges that if police officers had "properly" investigated Jeff Trujillo's complaint, they would have established that the plaintiff was innocent. Id. at ¶ 38. However, an

---

[7] The Amended Complaint does not identify the arresting officer.

arrestee's actual innocence does not vitiate the probable cause that existed at the time of the arrest. Romero v. Fay, 45 F.3d 1472, 1477-78 (10th Cir. 1995).

The plaintiff also alleges that the defendants detained him "with no basis in fact or law to do so." *Amended Complaint*, ¶ 71. Once a suspect is arrested and detained, the Fourth Amendment requires that a judicial determination of probable cause be made within 48 hours of the arrest. Gerstein v. Pugh, 420 U.S. 103, 111-14 (1975); County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991).

The plaintiff does not allege that he was detained beyond a 48 hour period. To the contrary, he states that he was detained "for approximately 21 hours." *Amended Complaint*, ¶ 35. Indeed, the plaintiff does not argue that his detention was unreasonably delayed. Instead, he alleges that he "requested that Officer Duran not detain him at Las Animas County Detention Center" because "Henry Trujillo was on duty in the Detention Center" and he was "in fear for his life." Id. at ¶ 36. However, the plaintiff does not allege any additional facts to state a plausible claim concerning the conditions of his confinement.

The Tenth Circuit Court of Appeals has stated:

> Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims. The Eighth Amendment requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety. To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component.
>
> The objective component requires that the alleged deprivation be sufficiently serious. Although what constitutes cruel and unusual

> punishment under the Eighth Amendment must draw its meaning
> from the evolving standards of decency that mark the progress of a
> maturing society, the Constitution does not mandate comfortable
> prisons. To the contrary, jail conditions may be restrictive and
> even harsh without violating constitutional rights. Indeed, only
> those deprivations denying the minimal civilized measure of life's
> necessities are sufficiently grave to form the basis of an Eighth
> Amendment violation. This inquiry turns not only on the severity
> of the alleged deprivations, but also on their duration.

Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (internal citations and quotations omitted).

The plaintiff does not allege any facts to support a plausible claim that his arrest and detention violated his constitutional rights. The Motion should be granted insofar as it seeks dismissal of Claim Three for failure to state a claim upon which relief can be granted.

### Claim Two

Claim Two alleges that defendant Glorioso in his capacity as Chief of Police of the Trinidad Police Department and defendant City of Trinidad "adopted and implemented careless and reckless policies, customs, or practices" allowing employees of the Trinidad Police Department to (1) "arrest a witness for the State of Colorado . . . without any reasonable training" in violation of the plaintiff's First Amendment rights, and (2) "restrain the Plaintiff and detain and endanger him in a detention facility that created a substantial risk of death or serious injury." Claim Two further alleges that Glorioso and the City of Trinidad failed to adequately train and supervise defendants Dispatcher, Duran, Vigil, and Vasquez in violation of the plaintiff's Fourth, Fifth, and Fourteenth Amendment rights, and that the defendants deprived the plaintiff of constitutionally protected rights including "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from a use
12

of force by persons acting under color of state law; and e) the right to just compensation for taking of property."

The defendants assert that Claim Two must be dismissed because there was no underlying constitutional violation by the individual officers. *Motion*, pp. 4-5.

In <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694. A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers. <u>Id.</u> at 690. A custom is a "persistent and widespread ... practice[] of ... officials." <u>Id.</u> at 691 (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-168 (1970)).

Where the theory of municipal liability is, as here, entirely dependant on the municipality's responsibility for its police officers' alleged unconstitutional acts, liability is precluded if there is no underlying constitutional violation by the individual officers. <u>City of Los Angeles v. Hellar</u>, 475 U.S. 796, 799 (1986); <u>Hinton v. City of Elwood, Kan.</u>, 997 F.2d 774, 782-83 (10th Cir. 1993). Because the plaintiff has failed to allege any facts to state a plausible claim that the individual defendants violated his constitutional rights, he cannot hold the defendants liable in their official capacities,[8] nor can he hold the City of Trinidad liable. <u>Id.</u>

---

[8]Suits against officers in their official capacities are suits against the entity of which an officer is an agent. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).

Claim Two also alleges that Glorioso failed to adequately train and supervise defendants Dispatcher, Duran, Vigil, and Vasquez. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Consequently, respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993). See also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violation, liability will not be imposed on a supervisory official. Id.

Because the plaintiff has failed to allege a constitutional violation, he has failed to allege that Glorioso was directly responsible for violating his constitutionals rights. Accordingly, the Motion should be granted to the extent it seeks dismissal of Claim Two.

### C. State Law Tort Claims

The remaining claims--Claims Four through Eight--allege state-law-based tort claims. This Court may decline to exercise supplemental jurisdiction over the plaintiff's state tort claims when it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the plaintiff's constitutional claims fail, I recommend that the court decline to exercise supplemental jurisdiction over the remaining state tort claims, and that Claims Four, Five, Six, Seven, and Eight be dismissed without prejudice.[9]

---

[9] As a result of my determination that the plaintiff's claims must be dismissed on the foregoing grounds, I do not address the defendants' remaining arguments.

### D. Proposed Second Amended Complaint

On December 4, 2009, the plaintiff tendered a proposed second amended complaint [Doc. #87]. The proposed second amended complaint is identical to the Amended Complaint except that it names as a defendant the City of Trinidad, and it adds a ninth claim which alleges the state law torts of outrageous conduct and libel. Id. at p. 20.

Effective December 1, 2009, Rule 15, Fed.R.Civ.P., provides that a complaint may be amended once as a matter of course within 21 days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed.R.Civ.P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Id. at 15(a)(2).

The plaintiff's proposed second amended complaint was tendered more than 21 days after serving his initial complaint and more than 21 days after the defendants filed their motion to dismiss. The plaintiff has not shown that the defendants provided written consent to file the proposed second amended complaint.[10] Therefore, the plaintiff may amend only with leave of court.

A motion to amend may be denied on the grounds of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or

---

[10]Indeed, the plaintiff does not certify that he served his proposed second amended complaint on the defendants.

futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). "Where a party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998) (internal quotations and citation omitted). "A district court acts within the bounds of its discretion when it denies leave to amend for untimeliness or undue delay." Id. (internal quotations and citation omitted).

Here, the plaintiff's additional claim is based on acts and omissions alleged in the Amended Complaint. Therefore, he knew the basis for his additional claim at the time he filed his Amended Complaint.

In addition, I previously directed the plaintiff that in order to amend his Amended Complaint, he was required to submit on or before October 12, 2009, a motion to amend and a proper proposed second amended complaint which named all of the defendants in the caption [Doc. #75]. Subsequently, the plaintiff submitted a proposed second amended complaint which did not include all of the defendants in the case caption [Doc. #67]. I recommended that the motion to amend be denied [Doc. #75], and the district judge affirmed and adopted my recommendation [Doc. #83]. The plaintiff has now tendered the instant proposed second amended complaint. He did not submit a motion to amend with the tendered complaint, and he submitted the proposed second amended complaint on December 4, 2009--almost two months late.

Finally, because I have recommended that the court decline to exercise supplemental jurisdiction over the remaining state tort claims, and because I have found that the plaintiff has failed to state a claim against the City of Trinidad, it would be futile to allow the plaintiff to

amend his Amended Complaint to add more state law tort claims and to name as a defendant the City of Trinidad. Accordingly, I recommend that the plaintiff's attempt to file a second amended complaint be denied.

## IV. CONCLUSION

I respectfully RECOMMEND that the defendants' Motion to Dismiss be GRANTED and that Claims One, Two, and Three be dismissed with prejudice.

I further RECOMMEND that Claims Four, Five, Six, Seven, and Eight be DISMISSED WITHOUT PREJUDICE.

I further RECOMMEND that the plaintiff's attempt to file a second amended complaint be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated May 25, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge